for all of my 29 or 75 colleagues over there, but I personally find it interesting and stimulating. Please go ahead. I believe it's still good morning, Sandra Lopez of the Federal Defenders on behalf of Mr. Torres. I'd like to reserve two minutes of my time for rebuttal. You might, but I think you might not. The jury selection process in the Southern District of California, which relies exclusively on a voter registration list, violated Mr. Torres' right under the Sixth Amendment to a jury representing a fair cross-section of the community. Mr. Torres did meet the three-pronged test set forth by the Supreme Court in Duran and provided the District Court with prima facie evidence of a fair cross-section violation. I don't think it's particular. No doubt about one. Right. No doubt about one. So my primary focus will be the second prong, the under-representation of Hispanics, and then I'll briefly discuss the third prong, the systemic exclusion. There was an unreasonable and unfair representation of Hispanics. Well, you had age-eligible and you had jury-eligible data. Correct. Age-eligible and jury-eligible data. Right. Right. And using the age-eligible data, we can determine the whole community comparison, which has been set forth in Rodriguez-Lara. Jury-eligible is more accurate, isn't it? Jury-eligible, that's the problem that, one of the problems that was looked at in Rodriguez-Lara, that it's difficult to determine what is jury-eligible. Well, who brought forward the jury-eligible data? Mr. Torres' expert, Dr. Weeks. That was your expert. Correct. Okay. Correct. So he brought forward both jury-eligible and age-eligible representations of Hispanics. Yeah, that was your data. So now you're undercutting it as not accurate? Well, Your Honor, this case was consolidated with another district court case, Martinez-Orozco. I understand that. And the district court there instructed Mr. Durant, I apologize, Dr. Weeks, to specifically look at jury-eligible Hispanics based on this Court's prior precedent in cases such as Artero. This Court repeatedly told the Federal defenders only to look at jury-eligible Hispanics in the community. So we did provide that information. But along with that information, we also provided age-eligible Hispanics. Well, if you take either one, the absolute disparity doesn't seem to be enough to get you over the hill, does it? I mean, we've got a case where 7 percent absolute disparity isn't enough, and here you've got much less absolute disparity than that. I believe we do have much more than that absolute disparity. Looking at the age-eligible Hispanics in the community, and I provided that in my reply brief on page 9, and also in my 28-J letter, I clarified using the 24.8 percentage of age-eligible Hispanics, we get an absolute disparity of 13.1 percent and 10.1 percent. What if you use jury-eligible, which was dated also? I don't think the district court is required to use to exclude jury-eligible if you give them that data. Well, based on Rodriguez-Lara, I respectfully disagree with that. I think Rodriguez-Lara tells the district court that we should be focusing on the whole community and not jury-eligible community. I'm not sure Rodriguez-Lara says exactly that. I think Rodriguez-Lara says... Rodriguez-Lara is distinguishable because in Rodriguez-Lara, the court held that the defendant was not required to come forward with anything more than total population figures. Not required. But if they do, and you did, the district court's not prohibited from using that better data, or those different data. I mean, that was your data. Right. This is not required, doesn't prohibit. I think, actually, what Rodriguez-Lara does is clearly set out this standard that we should be applying. And Rodriguez-Lara says that the standard is clear enough. It is the community that comparison must be made for purposes of the fair cross-section claim. And there's an emphasis in the word community. And it cited the Supreme Court... Rodriguez-Lara says where the record contains population data broken down by age, the representativeness of the jury pool is to be compared to this refined set of data for the purpose of defendant's prima facie case under Duren. Correct. And that's what we provided, the 24.8% is that age eligible. It doesn't say jury eligible. And I think Rodriguez-Lara made a couple of points. It cited Duren, where Duren said... But again, where does it say you cannot use jury eligible data? Well, I think what Duren is saying is that what we're supposed to be looking at is the master wheel. Did they have jury eligible data in Rodriguez-Lara? I believe that the government submitted that information to the District Court. I mean, to the Court of Appeals. We'll ask Mr. Kernow about that. But yes, it did focus on this whole community test. And it also stated that this whole community is much more reliable data. But what's your definition of whole community? Do you mean... When you say whole community, do you mean everybody who speaks Spanish who's Hispanic, including undocumented or illegal aliens? Or eight-year-olds or five-year-olds or three-year-olds? I mean, community is nice to talk about at election time. But what about... What do you mean... What's the legal definition of community which the District Court cited? Well, the definition of community that we provided the District Court was age-eligible community. And jury-eligible. All Hispanics in the Southern District of California. Jury-eligible, age-eligible Hispanics. Those are the people we're really interested in. Right. I believe that Rodriguez-Lara tells us to look at this whole community to determine who is being called for service. Again, whole community including who, what? Age-eligible Hispanics. Age-eligible. Regardless of whether they're American citizens? Right. And one of the reasons why we do look at that, regardless if they're U.S. citizens or not, is because it's difficult to determine that data. And Dr. Weeks did attempt to... You came forward with jury-eligible data. Correct. Dr. Weeks did attempt to provide that data. And now you're telling us it's no good. And he did indicate that it was more difficult to establish that data than regular census data of age. Did he say it's not valid? No, he didn't. But the problem is... Isn't that the point? You came forward with data with your expert who said this is jury-eligible stuff. And it's difficult, but it's relevant. It's useful. It's reliable. And if that's the case, then you're telling us that the Court is prohibited by Ninth Circuit law from using data that's better, in the words of your own expert? But I think what Rodriguez – one of the things that Rodriguez-Slada is saying is that what we're supposed to be looking at is this whole – the master wheel. Who's being called to jury service? Your position is that jury-eligible is just not the right measure. Right. That is not reliable. It's just not the right measure. Right. Legally, it's not – it's prohibit – the Court is prohibited from using it. Correct. But once we call the master wheel, then we determine who, in fact, is jury-eligible. Let me make sure I understand what you mean by the community, okay? You've got people in the community. So let's say that includes, to begin with, everybody who lives in, what, the Southern District? Right. Okay, that's the community, right? And then you peel off – you've got people who are not old enough. They're not? Not old enough. Not old enough. Under 18. How are those three? Are they treated as part of the community or not, as far as you're concerned? I believe it's just age-eligible communities, so anybody above the age of 18, which is of a Hispanic descent, would be – I mean, you could make a different argument. I'm not saying you should or shouldn't. You remember Gaza versus the L.A. redistricting case? That was the whole issue as to whether – you know, because Hispanic community had more – has more younger people and more people who weren't citizens. So the question was, do you look at people who are citizens? So you could say even children are members of the community, but you're not taking that position. No, I think because – Okay. No, that's fine. I just want to understand, okay? So you're now saying, okay, we're only going to look at the adult population. So anybody who's under the age of 18 gets excluded. So let's say some – I mean, just hypothetically, I don't know this for a fact, but let's say it turns out Hispanic families have many more children than Anglo families, as an example. So that if you counted kids, you would have a different balance than if you only counted adults. You would say that's okay. You just look at adults. Correct. Right? Correct. Okay. So then you've got the group of people who are adults and who are – some of whom are undocumented, what we call illegal aliens or undocumented aliens, people just here. They live in the community, but they could be deported. They're not here in any lawful sense. Do you include those? In the – looking at the whole community? Yes. No. Okay. So then you've got people who are here legally but are not citizens or not yet citizens or not citizens of – are here on a work visa or a green card or whatever but maybe don't plan to become citizens or not citizens, but whatever they are. They may even have a lawful status in this country but are not citizens. Do you count them or do you not count them? I apologize. I think I might have misunderstood the last question, but they're not – That's okay. We can go back. We won't – The previous question was – Undocumented. Undocumented. So now I'm only talking about – They wouldn't be – The group of people who are here and have no lawful status. Right. Okay. So let me ask you that question again. Do you include them or do you exclude them? In determining the Hispanic community? Not the Hispanic community, the community. I mean, I presume there are some non-Hispanics who are – You don't take them out of the equation. You don't take them out. You add them. You keep them there. So the children you take out, but the illegals you keep in? Under age eligible. Right. Okay. I just want to understand your position. I'm not arguing with you about it. Okay. So anybody who's an adult and who is in the Southern District and actually living there. I think you'd exclude tourists and the like, right? Right. I mean, it's not a trivial question. I mean, you live in San Diego. You know there's a fair number of people who come from Tijuana to shop or whatever. I mean, not uncommon, right? Not uncommon. But you wouldn't count them because they have a permanent residence in Mexico. Right. But anybody who's got a permanent residence in the Southern District would, in your view, be considered part of the community even though they don't have any lawful status in this country? Correct. Okay. Do you justify that? Well, I think if we look at Rodriguez-Clara and the Supreme Court case in Duran, that issue came up. In Duran, they were trying to say, well, there are a lot of women that can't actually serve once they're called to serve because of various reasons. And the court in Duran said, no, that's not what we're looking at, whether or not they will actually be able to serve. What we're looking at is this age-eligible group of women in the community. But they were not dealing with people that don't have a lawful status. They were dealing with people who can't serve for some other reason, just unable to serve. Right. You understand there are a little bit different issues. It's one thing to say, look, even though, let's say you are, I mean, somebody is blind, for example, and for that reason can't serve as a juror on a trial. I assume it's the kind of trial where you... Correct. Let's just assume that they would be excluded from jury service. You can't serve. Nevertheless, you can vote on whatever. You can participate in the community. You just can't be a juror because you don't have eyes and eyes, or you don't have ears and ears are necessary to, or, you know, ability to hear. Right. So they wouldn't be disqualified. But they wouldn't be legally disqualified from being a member of the community, whereas people who are here illegally are, as a matter of law, considered not to really be here in a sense. They are subject to removal. Right. But I still believe that Rodriguez thought it addressed that issue in saying that, and I acknowledge that Dr. Weeks did present that evidence to the district court, but it's difficult to come up with that actual number, and that actual number that he came up with might not have been as representative as the actual census data provided. Is that what he said? Well, he did articulate how he came across to the 16.1%, and he had to take several other steps to determine that number. And Rodriguez-Lara says that we should just be looking at the census data because that's much more reliable. That's not what it says. It doesn't say you're required and you have no other option except to look at that data. It says all were available in the record age-eligible population data. Right. And I'm agreeing with the age-eligible population. He didn't say all were available, the jury-eligible population. So you're telling us if somebody came in with perfect data, somebody had gone around literally to every person in San Diego County and figured out with 100% accuracy who's eligible and who's not, and come in and said, here it is, here's everybody, you'd say can't use it, Rodriguez-Lara. Well, I think what we're looking at, again, is the master will. But you say can't use it. No, because we're looking at the master will. We're just looking at who's actually going to be called to jury service. Once we look at who was actually summoned and who's serving, then that's a different issue. But right now we're looking at the broader picture of the master will. Your position is that ability to serve is not the right measure. Membership in the community is the right measure. Correct. And legal eligibility to serve as a juror has nothing to do with that. The grand jury requirement requires a grand jury that reflects the community. And the community consists of people, some of whom are living here, even though they be unlawfully living here. That's your position. Right. And I think we also need to acknowledge the fact that the previous cases, such as Artero, not only looked at undocumented persons, but also looked at fluency of a person's language in English and other factors. Do you think Artero and Rodriguez-Lara can be reconciled? I think Artero cannot be reconciled based on Rodriguez-Lara. I think Rodriguez-Lara is the binding precedent of this Court at this time,  Well, if the two of them are in conflict, didn't Artero come first? And don't we have a situation where if there are conflicts in our cases, we have to call a foreign bank? Right, and I think Rodriguez-Lara addressed that as well in saying that Sanchez-Lopez was our initial case and that Sanchez-Lopez was the binding precedent in Artero and the subsequent cases could not overrule that simply by a three-judge panel. It's curious because we have precedent that tells us what we do if there is a real conflict, also written by Judge Fletcher. It's called Antonio v. Wardcroft-Pack and it says you have to call a foreign bank. You can't just say we go with the earlier precedent. Foolish inconsistency is the hobgoblin of small minds and we certainly don't have a small mind. Well, I think, and I think Rodriguez-Lara, you know, discusses the fact that this was the test used by the Supreme Court. It was the appropriate test. It was the appropriate test used in Sanchez-Lopez, which is the binding precedent and that's why Rodriguez-Lara decided to follow Sanchez-Lopez and the Supreme Court's decision. So looking at this whole community approach, I do believe that the percentages of 13.1 percent and 10.7 percent. Just so you, just so I understand, if you do look at community, if you look at age-eligible population, how much of a disparity do you get? In absolute terms, there's a 13.1 percent and 10.7 percent for 1999 and 2001. In relative disparity terms, there's a... But the relevant one is 2001, right? Because we're looking at a 2004 jury pool. I'm sorry, the indictment in 2004, which reflected the 2003 jury pool, which was selected based on the 2001 figure. And we submitted the 1999 as just to show the... But it makes a difference because it's not clear to me that even if you go with that, 10.1? 7 percent. Is that enough? I believe so, Your Honor. This Court has said that anything less than 7.7 isn't a significant disparity. But numbers such as 14... But it would say anything more than 7.7 is. This Court hasn't established a threshold as to what... 7.7 is not enough. Anything less than 7.7 is not enough. I think that case... And what have we said is enough? 14.55, 15.4 percent is enough. And those are Rodriguez-Lara and Randolph. 10 is right in the middle, isn't it? Right. Closer to 7 than to 14, no. 10.1? Everything I learned in kindergarten is all I need to know. 10.7? 10.7 percent. And I think even if we just... In the middle. Even if we just look at this absolute disparity number, I think we submit that that's enough to meet the prima facie requirement. I'd like to reserve the remaining 30 seconds of my time for rebuttal, if I may. You have. You have a minus 9.33. You owe us 9 minutes. You can reserve all of that. Okay, great. Thank you. Mr. Colonel? You need a Bill Murray clock. Talking about Rodriguez-Lara, first of all, to answer your question, Judge Trott, in that case there was no breakdown either under the Esquivel page appropriate or jury eligible. In fact, at page 942... I think we need a clock. Excuse me? Go ahead. Go ahead. At page 942 on Rodriguez-Lara, the court acknowledged that the... adhered to the Duran-Sanchez-Lopez defendant need not come forward with jury eligible population data. And that wasn't done there. But what the court in Rodriguez-Lara did acknowledge was that if you have it available, you can break down the general community and cite it to Esquivel where it's age appropriate. But again, as was pointed out, there is nothing in that case that says you can't go further down if you've got the data. And in this particular case, Dr. Weeks very, very thoroughly went down and broke the data down from the general community down to finding jury eligible individuals. That presupposes that the thing we're trying to get at is jury eligible individuals. You know, we take age appropriate population as a proxy, but if we can get more specific, if we can get jury eligible population, that's better. But is that entirely clear? Why is jury eligible population the benchmark? Why isn't the requirement that the grand jury reflect the community mean the community? Includes illegals and aliens... I'm sorry. Includes illegals and children and everybody who lives in the community so long as they're human. Why isn't that the right interpretation? Well... You laughed. The Jury Selection Act specifically states that they've got to be people who are eligible to vote. And in that particular case... Oh, no, no, that's certainly true. The people you actually select have to be eligible to vote, but in deciding whether they're representative of the community, you have to decide what your baseline is, what the community is. And the community includes all sorts of people. Includes children, includes illegals. I mean, those are all members of the community in a real sense. Why doesn't community mean community? It means everybody who's running around the streets, even, you know, living in houses, even though not all of them can serve. Well, from a purely administrative standpoint, culling through that community in the Southern District of California when you consider the huge number of illegal aliens and the huge number of aliens that are there, legal residents but not citizens, to go through that and finally separate, cull out that group would just be... Oh, no, no, you don't have to cull out. You do have to cull out. I'm sorry? You do have to cull out because only 18-year-old citizens who have a reasonable acquaintance with English can serve on the grand jury. What's the ultimate question we're trying to answer? Whether there was underrepresentation on the grand jury or just underrepresentation with respect to the whole ineligible community? I'm sorry. I don't follow that question. Are we looking to see whether they're unrepresented on the grand jury? Yes. Or just unrepresented somehow in connection with everybody who's out there? I believe the defense, the defendant, is complaining about the makeup of the grand jury that would turn an indictment against him. So you necessarily have to look at who's eligible. If a bunch of people aren't eligible, that doesn't reflect at all an underrepresentation on the jury. That's true. You have to break down, you have to get to the group and the... Well, let me ask you this, Mr. Colonel. Let's say you quit your job and get elected to Congress. So there you are in your office in Washington and from San Diego. You know, one of those districts in San Diego. I don't know what congressional districts would be. And you get a consensual... Duke Cunningham's district is open. So maybe... laughter Let's pause it there. I like that. So there you are. You've been elected and you're sitting in your office there in the Raven Building and you get a visitor from San Diego and it's a 17-year-old San Diego resident who happens to have done well for himself because he's a smart guy with computers and he comes and he wants to talk to you and he says, you know, you're my elected representative and first of all, let me tell you I've made a generous contribution to your PAC but of course this should not affect our discussions at all, I'm just letting you know this laughter and I would like to express my concerns. Now, would you say no, sir, you are under 18, I don't represent you you are not my constituent you know, you go away and come back when you're 18 and then I'll talk to you I mean, you wouldn't take that position, would you? You are the congressman you are, I mean the president is forever answering letters from schools and teachers and fifth graders and all that I mean, you know, these are all constituents these are all individuals who even though they can't vote nevertheless make up the body politic so I am not sure why we exclude them from the you know, if we say this is the community why we necessarily exclude them from grand jury or from determining the makeup of the grand jury or anything else Well, the if that's the case then what I hear you saying is that even under Rodriguez, Laura and Esquivel if you can break it down further from this mass of people that you cannot do that but Esquivel and Rodriguez, Laura both recognize that you can do something to call through the community to reduce the number of people who are eligible and once again the case is recognized you can do that and in Esquivel that did happen and in this case it happened even more to the extreme Dr. Weeks having been in Esquivel and apparently learned his lesson that he could and did go further and his declaration is very clear and it's not as was presented by Appellant it's not that difficult a task because in his paragraphs 9-12 in his declaration he tells you how he did it and apparently there are sources out there that do it because what he does is he refines it down to the level that we need to get to eventually as to who's eligible and who's not It's a long answer which I didn't understand at all Are you saying our case law says you have to look at jury eligible that that's the right measure of community? No, our case law has not spoken to that yet the only mention that I can see where it says jury eligible population is in Rodriguez-Laura which says that the defendant does not have to come forward Why didn't Garza? Are you familiar with Garza? Excuse me? Are you familiar with Garza? Garza. You know it's not a criminal case it's a redistricting case it involves redistricting over the county of Los Angeles for about ten years ago a little more than ten years ago Opinion by Judge Schroeder joined by Judge Nelson and this was the very issue, the question is whether community for purposes of apportionment, purposes of dividing up districts to make sure that they're  count in or do not count in people who are not eligible to be voters and I seem to recall that we held after some skepticism on my part, I think I wrote a concurrence on the point, that we look at the community as a whole, we don't peel out just people who are eligible to vote or just citizens Well, I'm not familiar with that and I would suggest that that's not the situation we have here especially it's not the situation we have here because I think the cases that we do have on this point Rodriguez, Laura Sanchez, Lopez and Esquivel tell us that if you can't do anything else you've got to start with the community but you can still break it down Conceptually though the question of apportionment and the question of grand jury representation are really very similar questions in both situations in one situation you have elective representatives county supervisors members of congress and the like going to Washington or going to whatever the county seat is to represent constituents on the other hand you have the grand jury and the grand jury is in a sense also representative of the people and you have to figure out your baseline for purposes of representation you know how do you count how do you count the numbers what constitutes the community and I have a hard time thinking that you come up with different questions for apportionment purposes than you do for the purpose of determining grand jury I just don't know how to divide those things in my mind well if that in fact is an issue I would appreciate the opportunity to go back and brief Garza because I have not read it nor am I familiar with it I understand our cases are in this array you would agree wouldn't you well doesn't doesn't um um Rodriguez Lara ride the rough shadow of Artero and doesn't Artero in turn do violence to Sanchez Lopez and Esquivel well if you if it in fact there are cases that seem to contradict each other unfortunately I think Rodriguez Lara talking about first in time I believe that's the law for the issue that's first raised and decided is the one that's that's decided but the only the uh that's not what our law is our law is Antonio vs. packing which says it is a conflict you have to call for a bank you can't resolve if you have two cases going different ways on the same proposition a panel can't choose between them can't choose the earlier one or the later one what you have to do is to call for a bank and try to get the issue resolved in bank and perhaps that should happen but as Rodriguez Lara points out in her end in the footnote they do talk about they do talk about the footnote 23 they talk about the community let me ask you this do you think 10. what is the number here 10.7 so if you make the assumption that you go with the community model no it's not the community model it's the age eligible model as opposed to the jury eligible model you get to 10.7 is that close enough is that enough of a disparity to raise a an issue no because it's only three percentage points higher and if you apply that percentage to the grand jury you could say only but you could also say half again as much you could say 3% of 7 is about 40% more you know imagine what we would all look like if we were 40% taller well that's true couldn't fit through the door or anything or 40% more weight if you apply the 3% of the 23 people if you apply the 23% excuse me the 3% of the 23 people on the grand jury you get a fractional person so it's not that big a deal so 3% more is up to 10.7 is not truly an issue if you get to 14 or 15.4 as I believe in the Rudolph case then that becomes an issue that's twice as many as 7.7 you know that's an interesting argument but I think the way it works is let's say we have 50 or 20% we wouldn't be saying well in that case you go ahead and add one more person to the grand jury or you sort of change the racial makeup or the ethnic makeup of the people on the grand jury what you say is that triggers the necessity to broaden your base it doesn't guarantee that you'll get a fractional additional person or you'll get an actual additional person or two additional people but what it says is you now can no longer rely on the jury or the voter registration rolls and you have to go to other methods the way the state does maybe to driver license records or some other record which broadens the community and changes the disparity you then have a draw and you may still get you know you may get more or less it doesn't guarantee any particular makeup on any particular grand jury it just guarantees that the pool from which you draw is more representative is less disparate well no it's not more representative because in the southern district of California I mean as to people who are eligible to serve on the grand jury the southern district as I pointed out there are three groups of Hispanics the citizens, the legal residents and the illegal residents and all of them can obtain driver's licenses of that group the only ones that can vote are the legal citizens so if you throw in driver's licenses you're going to have a huge pool, a huge group of people who are simply not eligible to serve on the grand jury okay thank you Mr. Connell you didn't give us back some of that time you owe us I just wanted to point out we'll give you a minute okay that's great I just wanted to point out if we do look at 23 people on a grand jury and we look at 14% absolute disparity that would be 3.5 Hispanics missing from each grand jury and if we look at 10.7 it would be a little bit over 2.5 people for each grand jury pool and that's one of the problems in looking just at absolute disparity because it doesn't really show what the significance is in the decreased number of Hispanics in the jury pool and I'd also just like to quickly point out that the northern district of California, several other district courts throughout the country use supplemental driver's license and ID's to supplement their jury selection process the state of California does it and it uses such standard in order to incorporate a broader base of the Hispanic community in the districts we're talking here just about grand jurors correct you're not challenging the selection actually grand and petite jurors oh you are so southern district of California uses the same basis for selecting petite jurors and for grand jurors so you are challenging essentially both methods correct but you don't really have standing to challenge the petite jurors right this would just be a consequence of the if you succeed in this challenge this would change the system both as the grand jurors and petite jurors that's correct your honor just so I understand okay counsel thank you we are done
judges: Kozinski, Trott, Bea